# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**BURROUGHS DIESEL, INC.**                                                                           **PLAINTIFF**

**VERSUS**                                       **CIVIL ACTION NO. 2:18-cv-26-KS-MTP**

**BAKER PETROLITE, LLC, et al.**                                                  **DEFENDANTS**

## ORDER

THIS MATTER is before the Court on Plaintiff's Motion [71] to Compel Discovery against Defendants, Baker Petrolite and Baker Hughes.[1] Having considered the parties' submissions, the Court finds that Motion to Compel [71] should be granted in part and denied in part.

This action arises out of the alleged failure of a tank, owned by Defendants, on October 14, 2016 that contained hydrochloric acid. The acid allegedly traveled through the air and damaged Plaintiff's real and personal property.

On August 16, 2018, Plaintiff served interrogatories and requests for production of documents on Defendants. *See* Notices [41], [42], [43], [44]. On August 31, 2018, Defendant Baker Petrolite filed its discovery responses. *See* Notices [47], [48]. On October 1, 2018, Defendant Baker Hughes Oilfield Operations filed its discovery responses. *See* Notices [49], [50].

The Court held a conference with the parties on October 30, 2018 to discuss several discovery disputes. After the parties were unable to agree on all the issues, Plaintiff filed the instant Motion.

---

[1] Poly Processing Company, LLC is also a named defendant in this action. The Motion to Compel [71] is not directed at Poly Processing. As the Court references Defendants in this Order it only refers to Defendants Baker Petrolite, LLC and Baker Hughes Oilfield Operations.

The Court applies the standard set forth in Federal Rule of Civil 26(b)(1) which allows for discovery of material that is proportional to the case and non-privileged. "The party seeking discovery bears the burden of showing its necessity." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009). Discovery is "to be accorded a broad and liberal treatment to effect [its] purposes of adequately informing litigants in civil trials." *Herbert v. Lando*, 441 U.S. 153, 176 (1979). "At some point, however, discovery yields diminishing returns, needlessly increases expenses, and delays the resolution of the parties' dispute." *Willis v. City of Hattiesburg*, 2016 WL 918038, at *2 (S.D. Miss. Mar. 10, 2016). Discovery disputes are left to the discretion of the trial court. *Freeman*, 556 F.3d at 341. Having carefully considered the Motion, the Court rules as follows:

**Interrogatory No. 7**

> Interrogatory No. 7: Please identify all ruptures of tanks containing hydrochloric acid in tanks owned by Baker Petrolite or Baker Hughes for the last ten (10) years, and identify specifically the location, cause of the rupture of the tank, amount of acid spilled, and reference all claims for damages or civil actions arising from the rupture of the acid spill.

This information is relevant to the claims at issue, but the request is far too broad. Defendants have already answered this interrogatory regarding all ruptured tanks owned by Baker and manufactured by Poly Processing within the past five years in Mississippi, Louisiana, and Alabama. Plaintiff also requests this information regarding Texas.

The request will be granted in part. Defendants shall identify any such ruptures of tanks for a five-year period, from the date suit was filed, in Mississippi, Louisiana, Alabama, and Texas which have resulted in the filing of a lawsuit. For any such lawsuit filed, Defendants shall provide the names of the parties, identify the court where the suit was filed, and the cause

2

number.  The Motion to Compel as to Interrogatory No. 7 is GRANTED IN PART and DENIED IN PART as set forth above.

**Interrogatory No. 11**

>   Interrogatory No. 11:  Please state the company or individuals that you purchased hydrochloric acid from for the five (5) years prior to the subject spill on October 14, 2016, identify the person or entity who filled the tank and at what pneumatic pressure by which the tank was filled, and list the persons or entities who utilized or purchased hydrochloric acid withdrawn from the subject tank within this five (5) year period.

Plaintiff concedes that Defendants have already provided records pertaining to the filling of the tank for the past five years.  The only issue remaining is records regarding the identity of the purchasers and how much hydrochloric acid was purchased.

Defendants assert that the transfer of acid from the tank at issue to the intermediary tank, from which the acid was actually sold, was not recorded, and records of customer purchases from the intermediary tank will not aid the Plaintiff in calculating how much acid was in the tank at issue when the alleged failure occurred.  Mem. [76] at 4-5.  The Court finds that this information would not be relevant to the claims and defenses considering that the acid that was sold was drawn from an intermediary tank and not the tank at issue.  The burden of producing this information outweighs any likely benefit.[2]  The Motion to Compel as to Interrogatory No. 11 is DENIED.

**Interrogatory No. 16**

>   Interrogatory No. 16: Please provide a list containing the model number, year manufactured and serial  number of any and all storage tanks which you have previously purchased from Poly Processing Company, LLC on any storage facility owned by Baker Petrolite and Baker Hughes, identify each tank which has cracked, ruptured, or leaked, and give dates, locations and cause of the cracks, ruptures, or leaks.

---

[2] It does not appear that this information for any time period would be helpful to Plaintiff if it is never established how much was in the tank at the beginning of any given period.

Plaintiff states in its Motion that it would limit the scope of this interrogatory to the past five (5) years within the states Mississippi, Louisiana, Alabama, and Texas. Mot. [71] at 4. Defendants have already provided this information regarding tanks in Mississippi, Louisiana, and Alabama, but they object to providing the information from Texas. Defendants shall provide this information regarding any such tanks which are the subject of any lawsuit identified in Interrogatory No. 7. The Motion to Compel as to Interrogatory No. 16 is GRANTED IN PART and DENIED IN PART as set forth above.

**Request for Production No. 3**

> Request for Production No. 3: Please produce all documentation of any type or sort relating to purchase of tanks from Poly Processing Company, LLC ("Poly Processing") or any other manufacturer for storage of hydrochloric acid for the last ten (10) years, including all documents relating to any of the tanks that have cracked or ruptured, the specific reasons for any cracking or rupture, the amount of acid leaked or spilled, and reference all civil actions by entities or persons alleging damages from the acid spill(s).

Plaintiff states in in its Motion that it would limit the scope of this request to the past five (5) years, from the date of the rupture, within the states of Mississippi, Louisiana, Alabama, and Texas. Mot. [71] at 5. Defendants have provided this information regarding tanks in Mississippi, Louisiana, and Alabama from 2011-2016. *See* Resp. [75] Ex. D. Defendants shall produce this information for the five years prior to filing suit for any tank manufactured by or purchased from Poly Processing that resulted in litigation in Mississippi, Alabama, Louisiana, or Texas. The Motion to Compel as to Request for Production No. 3 is GRANTED IN PART and DENIED IN PART.

**Request for Production No. 6**

> Request for Production No. 6: Please produce any and all documentation, including emails and electronically stored data, between you and any insurance company or expert who investigated the claim of the Plaintiff, concerning the investigation of the

cause of the spill or damages resulting from the spill, including documents to and from Custard Adjusting Company and Rimkus Consulting.

Defendants object to producing the report created by Custard Adjusting Company and the sub-contractor of Custard Adjusting, Rimkus Consulting, asserting attorney-client privilege and the work-product doctrine. They make similar objections to producing certain correspondence between Custard Adjusting and the in-house counsel. Defendants argue that Custard Adjusting was hired after their in-house counsel requested Gallagher Bassett Services, their third-party administrator, to hire an entity to participate in the inspection of the spill. Mem. [76] at 5. Custard Adjusting then hired Rimkus Consulting to inspect Plaintiff's tire inventory that was allegedly damaged by the acid spill. It is Defendants' position that Custard Adjusting is their agent because it was hired by Gallagher Basset, Defendants' claim-service provider, and the purpose of the report created by Custard Adjusting and communications with Custard Adjusting was to help in-house counsel assess the claims against Defendants. *Id*. at 6.

First, the Court will consider whether the Custard report and other communications between Custard Adjusting and Rimkus Consulting to Defendants' in-house counsel is protected by the work-product doctrine. Plaintiff argues that that report created by the insurance adjuster from Custard Adjusting was not made in anticipation of litigation and is therefore not protected as work product. Mot. [71] at 4-5. The Custard report at issue was created on November 21, 2016 and communicated to Defendants' in-house counsel and a representative for Gallagher Bassett that same day. *See* Resp. [75] Ex. E. Plaintiff asserts that its counsel sent a letter to Gallagher Bassett on February 14, 2017 and that this was the first indication of imminent litigation, and the report created by Custard on November 21, 2016 was produced prior to Defendants' anticipation of litigation. Reply [82] at 11. Further, Plaintiff argues that "facts discovered by an independent claims adjustor, during the ordinary course of its inspection of

5

property damages, are not protected work product." *Id*. at 14. If work product is properly claimed by Defendants, Plaintiff requests that the Court conduct an *in camera* review of the report and the withheld communications to redact the work product. *Id*. at 15.

Defendants counter that the work done by Custard Adjusting was done in anticipation of litigation. Defendants point to a letter they received on October 19, 2016 from counsel for Travelers Insurance Company, the insurer of Plaintiff, titled "Notice of Potential Claim" regarding the chemical spill on October 14, 2016. *See* Resp. [75] Ex. F. Defendants argue that this letter from Travelers put them on notice of a potential lawsuit, the report created by Custard Adjusting came after this date, and the report was created to respond to a specific circumstance and not in the routine course of business. Mem. [76] at 7.

The work-product doctrine protects material prepared in anticipation of litigation. *See generally Hickman v. Taylor*, 392 U.S. 495 (1947). "The party asserting the privilege bears the burden of proving that the information requested is privileged." *Barker v. Kinder Morgan Se. Terminals*, LLC, 2007 WL 4333843, at *1 (S.D. Miss. Dec. 6, 2007) (referencing *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001)). The Court must consider for what purpose the document or documents at issue were created. If the "primary motivating purpose" in creating the documents was to aid possible future litigation, then the work-product doctrine applies. *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981).

Work product covers both "ordinary work product, such as memorandum and outlines, and opinion work product, including the opinions, strategies, or mental impressions of an attorney." *In re Xarelto (Rivaroxaban) Products Liability Litigation*, 314 F.R.D. 397, 402 (E.D. La. 2016) (citing Restatement (Third) Of The Law Governing Lawyers § 87 (2000)). "The work-product [doctrine] includes not only the attorney's product, but also the product of the

attorney's agent." *Sanchez v. Matta*, 229 F.R.D. 649, 654 (D.N.M. 2004). "[T]he doctrine protect[s] material prepared by agents for the attorney as well as those prepared by the attorney himself." *U.S. v. Nobles*, 422 U.S. 225, 238-239 (1975).

The record reflects that Defendants employed Gallagher Bassett who then retained Custard Adjusting and Rimkus Consulting in preparation of litigation. The Court finds that Defendants were put on notice of potential, if not imminent, litigation when they received the letter from Travelers's attorney on October 19, 2016. The work performed after this date is protected by the work-product doctrine.

This case is dissimilar to the numerous insurance cases in which an insurance company, as defendant, withholds its files and reports regarding a policy, claiming work-product privilege. Documents created by an insurer in a routine investigation are generally not considered work product. *See Willis v. Allstate Ins. Co.*, 2014 WL 1882387 (S.D. Miss May 12, 2014). In this instance, however, Defendants are not an insurance company, and in-house counsel for Defendants only retained the services of an insurance adjuster to asses their liability in preparation for litigation and after receiving a letter from Travelers's counsel entitled "Notice of Potential Claim."

Next, the Court will consider whether the Custard report and other communications with Defendants' in-house counsel are protected by attorney-client privilege. Plaintiff asserts that the documents created by Custard Adjusting and Rimkus Consulting are not protected by attorney-client privilege because the report at issue was created in the normal course of business and not for legal representation. Reply [82] at 6-7. Further, Plaintiff argues that Defendants have waived any attorney-client privilege regarding the Custard report because Defendants have produced correspondence between Gallagher Bassett, Custard Adjusting, and Defendants' in-

7

house counsel. *Id*. at 7. Plaintiff requests that if attorney-client privilege is found that the Court conduct an *in camera* review of the report and communications and redact the portions that are privileged. *Id*.

Defendants argue that the attorney-client privilege does apply to the communications between Custard Adjusting and its in-house counsel. It is Defendants' position that any work done by Custard was at the initiation of in-house counsel and the report and communications were for facilitating in-house counsel's assessment of claims against Defendants. Mem. [76] at 6. Defendants resist disclosing communications between its in-house counsel and third-party contractors hired to assist them regarding the hydrochloric acid spill.

"State law determines the applicability of a privilege in civil diversity actions where state law supplies the rule of the decision." *Baptist Health v. BancorpSouth Ins. Servs., Inc.*, 270 F.R.D. 268, 272 (N.D. Miss. 2010) (citing *Dunn v. State Farm*, 927 F.2d 869, 875 (5th Cir. 1991)). Mississippi Rule of Evidence 502(b) explains the privilege as follows:

> (b) General Rule of Privilege. A client has a privilege to refuse to disclose—and to prevent others from disclosing— any confidential communication made to facilitate professional legal services to the client: (1) between the client or the client's representative and the client's lawyer or the lawyer's representative; (2) between the client's lawyer and the lawyer's representative; (3) by the client, the client's representative, the client's lawyer, or the lawyer's representative to another lawyer or that lawyer's representative, if: (A) the other lawyer represents another party in the pending case; and (B) the communication concerns a matter of common interest; (4) between the client's representative or between the client or a client representative; or (5) among lawyers and their representatives representing the same client.

The question is whether the insurance adjuster employed by Custard Adjusting constitutes a representative of the Defendants for purposes of the above rule.

The Court has not found a Mississippi case that directly addresses this issue. Another court, however, has held that the confidential communications between a defendant's counsel

8

and a defendant's independent insurance adjuster, for purposes of legal advice or information, were entitled to attorney-client privilege. *Residential Constructors, LLC v. Ace Property and Cas. Ins. Co.*, 2006 WL 3149362, at *15 (D. Nev. Nov. 1, 2006). [3]

The Mississippi Supreme Court has stated that

> "the privilege relates to and covers *all information regarding the client received by the attorney in his professional capacity* and in the course of his representation of the client. Included are communications made by the client to the attorney and by the attorney to the client. In that sense it is a two-way street."

*Barnes v. State*, 460 So.2d 126, 131 (Miss. 1984) (emphasis added). Another court has stated that the "privilege protection attaches to those communications that would *facilitate the rendition of legal services or advice.*" *United Investors Life Ins. Co. v. Nationwide Life Ins. Co.*, 233 F.R.D. 483, 487 (N.D. Miss. 2006).

Here, a report was created by an insurance adjuster employed by Custard Adjusting at the request of Defendants' in-house counsel. While this information was communicated from the third-party to the attorney, the Court finds that the insurance adjuster was acting to aid counsel for Defendants and the report is protected by attorney-client privilege. Further, the act of communicating this information, regarding the client, to the in-house counsel for Defendants creates a privileged communication.

The attorney-client privilege only extends to communications and not to facts. *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). "The client cannot be compelled to answer the

---

[3] Other courts have found that the attorney-client privilege can extend to communications between the attorney and an independent contractor of the client. *See In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 218-19 (S.D.N.Y. 2001) (finding that a public relations specialist that worked with in-house counsel regarding pending litigation was equivalent of an employee); *Royal Surplus Lines Ins. Co. v. Sofamor Danek Grp., Inc.*, 190 F.R.D. 463 (W.D. Tenn. 1999) (finding that attorney-client privilege extended to insurance broker's consultations with in-house counsel and insured); *W. Res., Inc. v. Union Pac. R.R. Co.*, 2002 WL 181494 (D. Kan. Jan. 31, 2002) (finding that expert hired to consult regarding anticipated litigation was within scope of attorney-client privilege).

question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such a fact into his communication to his attorney." *Id*. at 395-396 (quoting *City of Philadelphia, Pa. v. Westinghouse Electric Corp.*, 205 F. Supp. 830, 831 (E.D. Pa. 1962)). The communications between Custard Adjusting and Defendants are by their nature privileged. Additionally, the Custard report is privileged because it was communicated to Defendants' in-house counsel while she was providing legal advice and services. The "facts" contained in the report may be discoverable through different avenues, but the report itself and related communications cannot be compelled.

Once the party asserting the attorney-client privilege meets its burden, the burden shifts to the party opposing the privilege to show that an exception or waiver applies. *Hewes v. Langston*, 853 So.2d 1237, 1262-1263 (Miss. 2003). Defendants have asserted attorney-client privilege related to communications between Custard Adjusting and its in-house counsel. Plaintiff has not demonstrated why the attorney-client privilege should not apply in this situation.

Plaintiff does argue, however, that the Custard report should be produced in a redacted form because it has a substantial need for this information. The Court is not convinced that there is substantial need. Further, Plaintiff argues that the work-product doctrine and attorney-client privilege have been waived by other disclosures. After reviewing the record, the Court cannot conclude that Defendants waived the privilege or protection afforded these documents.

The report at issue and all other communications between Defendants' counsel and third-party agents, Gallagher Basset, Custard Adjusting, and Rimkus Consulting, are protected by the work-product doctrine and attorney-client privilege. An *in camera* review of the Custard report

and the withheld communications is not necessary. The Motion to Compel as to Request for Production No. 6 is DENIED.

**Request for Production No. 8**

> Request for Production No. 8: Please produce all documents including emails and electronically stored data, relating to your investigation of the cause of the subject cracking and/or damages, resulting from the spill, including your incident report, investigation report, or any other reports relating to the cause of the cracking or tank rupture, and any expert consulting firm hired by you or your liability carrier, including but not limited to, all photographs taken by you, your insurance company, or consultants hired by your liability carrier.

Defendants initially objected to this request citing attorney-client privilege and work-product doctrine. They have since produced an incident report and a power-point presentation relating to the incident report. Mem. [76] at 7. Defendants assert that all other documents included in this request are protected by attorney-client privilege and are noted in their privilege log.

Plaintiffs argue the same position as to Request for Production No. 6 that the report produced by Custard Adjusting is not protected. As previously stated, the Court finds that the report and related communications are protected by the work-product doctrine and attorney-client privilege. The Motion to Compel as to Request for Production No. 8 is DENIED.

**Request for Production No. 19**

> Request for Production No. 19: Please produce all documents of your purchase of any acid storage tank manufactured by Poly Processing for the last ten (10) years and state the date, cause of failure, and amount of acid spilled from any prior cracking or leakage of tanks manufacture by Poly Processing.

Defendants have provided Plaintiff with information regarding tanks manufactured by Poly Processing which ruptured or leaked between 2011-2016 in Mississippi, Louisiana, and Alabama. *See* Resp. [75] Ex. D. Defendants object to providing any further information

concerning the failure of tanks manufactured by Poly Processing. Plaintiff asserts that Defendants should provide, at a minimum, any information relating to the tank used at Defendants' Laurel, Mississippi location prior to the purchase of the tank at issue.

The Court finds that Defendants should produce documents related to the tank utilized by Defendants prior to the purchase of the tank at issue, as well as the tank at issue. This information is relevant to how these tanks were handled and how often they were purchased at the Laurel, Mississippi facility. Plaintiff's Motion to Compel as to Request for Production No. 19 is GRANTED as it relates to the tank at issue and the prior tank and DENIED as to all other information or relief requested.

**Request for Production No. 21**

> Request for Production No. 21: Please produce any and all documents relating to your testing of any other acid storage tank manufactured by Poly Processing or any other tank manufactured for the last ten (10) years as a result of any cracking leaking or ruptures and produce the test results, incident report or investigation reports on each incident.

Plaintiff states in its Motion that it would limit the scope of this request to the past five (5) years in the geographical region of Mississippi, Alabama, Louisiana, and Texas. Mot. [71] at 8. Defendants have supplemented their responses and provided this information regarding Mississippi, Alabama, and Louisiana for 2011-2016. *See* Resp. [75] Ex. D. Information about other tanks is at best of limited relevance and use. The Court finds the information about other tanks in other rulings[4] to be sufficient. The Court finds that the information already produced is proportional to the needs of this case and will not compel Defendants to produce this information regarding Texas. The Motion to Compel as to Request for Production No. 21 is DENIED.

---

[4] See rulings regarding Interrogatory No. 7, Interrogatory No. 16, Request for Production No. 3, and Request for Production No. 22.

**Request for Production No. 22**

> Request for Production No. 22: Please produce the incident report required by federal and state law as to the cause of the subject tank rupture and hydrochloric acid spill, and all prior incident reports on tank ruptures and acid spills for the last (10) years for tanks manufactured by Defendant, Poly Processing.

Defendants have produced an incident report regarding the tank at issue but object to providing any reports relating to other ruptures for the past ten years arguing that such a request is overbroad considering that Defendants operate in over 120 countries and other tanks are unrelated to Plaintiff's claims. *See* Resp. [75] Ex. G. Plaintiff disagrees and argues that these reports are relevant and should be produced for at least the past five years.

Defendants have supplemented and provided any information regarding tank issues for the five years prior to the subject-tank rupture in Mississippi, Louisiana, and Alabama. The Court is not convinced that all reports concerning tank accidents worldwide, for ten (10) years prior to the subject tank rupture, would be proportional to the needs of the case. However, Defendants shall produce requested incident reports for ruptures or spills that resulted in any litigation in Mississippi, Louisiana, Alabama, and Texas for the five years preceding the filing of this lawsuit. The Motion to Compel as to Request for Production No. 22 is GRANTED IN PART and DENIED IN PART as set forth above.

**Request for Production No. 23**

> Request for Production No. 23: Please produce any and all electronically stored data or documentation which in any way relates to the investigation of the cause of the tank rupture, drafting of any incident report and any alleged damages sustained by Plaintiff, and investigation thereof.

Defendants objected to this request citing attorney-client privilege and work-product doctrine. Plaintiff argued in return that the requested documents were relevant and Defendants had yet to provide a complete privilege log from which Plaintiff could consider what documents were withheld based on these privileges. Defendants subsequently provided an incident report

13

along with a power-point presentation and updated their privilege log, which included all the responsive documents that were not produced. *See* Resp. [75] Ex. E.

As the Custard Adjusting report and related communications need not be produced and Plaintiff has not contested any other particular item on the privilege log, apart from the Custard Adjusting report, the Court finds that the Motion to Compel as to Request for Production No. 23 is DENIED.

IT IS, THEREFORE, ORDERED that Plaintiff's Motion to Compel Discover [71] is GRANTED IN PART and DENIED IN PART as set forth above. Except as noted above, all other relief is DENIED.

SO ORDERED, this the 11th day of December, 2018.

<u>s/Michael T. Parker</u>
United States Magistrate Judge