# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**BURROUGHS DIESEL, INC.**                                                                      **PLAINTIFF**

**v.**                                       **CIVIL ACTION NO. 2:18-CV-26-KS-MTP**

**BAKER PETROLITE, LLC,** *et al.*                                      **DEFENDANTS**

## ORDER

For the reasons below, the Court **grants in part and denies in part** Defendant Baker Petrolite, LLC's ("Baker's") Motion in Limine. Specifically, the Court grants the motion as to the statements and report of Richard Edwards, without prejudice to Plaintiff's right to make more specific arguments at trial as provided below. The Court also grants the motion as to the out-of-court statements of certain Howard Industries employees, the compromise offers and negotiations referenced in Baker's motion, and the initially produced copies of the Goodyear photos. The Court denies the motion as to the testimony of Caleb Worrell.

### A. *Statements and Report of Richard Edwards*

First, Defendant seeks the exclusion of certain statements and reports by Richard Edwards, an engineer hired by Plaintiff's insurer to inspect the property after the acid spill. Plaintiff's representatives testified that Edwards, while inspecting the property, made statements to them concerning the propensities of hydrochloric acid ("HCl") and the potential or actual damage to their property. Later, Edwards issued a report to the insurer regarding his findings. Defendant argues that

any statements that Edwards made to Plaintiff's representatives during the inspection, as well as his report are hearsay and inadmissible under Rule 802.

Hearsay is a statement that "the declarant does not make while testifying at the current trial or hearing," which "a party offers in evidence to prove the truth of the matter asserted in the statement." FED. R. EVID. 801(c). Hearsay is generally inadmissible. FED. R. EVID. 802. The Edwards statements and report are plainly hearsay. They are out-of-court statements, and Plaintiff has not articulated any reason for offering them other than to prove the truth of the matters asserted therein. Therefore, absent an exception to the hearsay rule applying, they are inadmissible.

1. *Record of a Regularly Conducted Activity*

Plaintiff argues that the Edwards report is admissible under the hearsay exception for records of a regularly conducted activity. Rule 803 provides that a "record of an act, event, condition, opinion, or diagnosis" is admissible if:

> (A) the record was made at or near the time by – or from information transmitted by – someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the possible source of information or other circumstances indicate a lack of trustworthiness.

FED. R. EVID. 803(6).

2

Plaintiff argues that the testimony of Richard Folse, the insurer's adjuster, demonstrates that the Edwards report meets the requirements of Rule 803(6). The Court disagrees. First, there is a lot of material in the Edwards report, and Plaintiff did not provide specific argument as to each observation and conclusion contained therein, to demonstrate that the entire report meets the requirements of 803(6).

Regardless, according to Folse's deposition testimony, Edwards inspected the property on October 25, 2016. In the report, Edwards stated that he inspected the property twice – on October 26, 2016, and December 8, 2016. The report was submitted to the insurer on January 25, 2017. Therefore, the report was not created at or near the time that Edwards inspected the property. Moreover, there's nothing in the Folse deposition which establishes that Edwards regularly prepares reports of this sort, and it's not clear whether the insurance company obtained this report in anticipation of litigation. *See Brauninger v. Motes*, 260 F. App'x 634, 637-38 (5th Cir. 2007) (reports created in anticipation of litigation are not created as part of a "regularly conducted business activity"). In fact, Plaintiff's attorney never specifically addressed the elements of Rule 803(6) in the deposition excerpt provided by Plaintiff. For these reasons, the Court concludes that Plaintiff has not demonstrated that the Edwards report is admissible under Rule 803(6).

2. *Present Sense Impression*

Plaintiff also argues that the statements Edwards made during the inspection are admissible as present sense impressions. Rule 803(1) provides that "[a] statement

3

describing or explaining an event or condition, made while or immediately after the declarant perceived it" are not excluded by the rule against hearsay. FED. R. EVID. 803(1). "The basis for this hearsay exception relies on the contemporaneousness of the event under consideration and the statement describing that event. Because the two occur almost simultaneously, there is almost no likelihood of a deliberate or conscious misrepresentation." *United States v. Polidore*, 690 F.3d 705, 720 (5th Cir. 2012).

The Court can not provide a ruling as to this exception without more specific testimony regarding what Edwards said. For example, if Edwards immediately described the results of a test as he conducted it during the inspection, then this exception may apply. However, if Edwards provided an opinion or speculated as to something that happened days beforehand – such as the acid spill – then the exception may not apply. The devil is in the details, and the parties' briefing simply doesn't provide enough detail for the Court to provide a ruling. If Plaintiff wants to raise this again at trial, it is free to do so.

    3.    *Rule 703*

Plaintiff also argues that the Edwards report is admissible pursuant to Rule 703, which provides that an expert's opinion may be admitted even if the facts or data underlying the opinion are not admissible. FED. R. EVID. 703. "But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion

4

substantially outweighs their prejudicial effect." *Id.* "Courts nevertheless must serve a gate-keeping function with respect to Rule 703 opinions to ensure the expert isn't being used as a vehicle for circumventing the rules of evidence." *Factory Mut. Ins. Co. v. Alon USA L.P.*, 705 F.3d 518, 524 (5th Cir. 2013). "Rule 703 was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion." *Id.* In short, Rule 703 "was never intended to allow oblique evasions of the hearsay rule." *Id.*

The Court needs to hear from Lorenzo in person to evaluate how much, if any, of the information within the Edwards report should be allowed to come in through Lorenzo's expert testimony. As noted above, there's a lot in the Edwards report. Presumably, Lorenzo did not rely on all of it in forming his opinions. Moreover, some parts of the report are more probative than others. Plaintiff has not provided specific argument as to the various parts of the report. Therefore, if Plaintiff wants to try to get in some or all of the Edwards report under Rule 703, it will have to make the requisite showing at trial.

*4.     Opposing Party's Statement*

Plaintiff argues that the statements Edwards made during his inspection are not hearsay, pursuant to Rule 801(d)(2). That rule provides that an opposing party's statement is not hearsay under certain conditions. FED. R. EVID. 801(d)(2). Plaintiff contends that Baker's claims adjusters adopted Edwards' statements. First, Plaintiff

5

has not adequately demonstrated that the various conditions in Rule 801(d)(2)(A)-(E) have been met. But, more importantly, Rule 801(d)(2) may provide a basis for admitting the first level of hearsay, Baker's agents' statements. But it does not provide a basis for admitting the second level of hearsay, Edwards' statements which Baker's agents purportedly adopted. Rule 801(d)(2) only applies to statements by an opposing party or that party's authorized agent. Edwards was not Baker's agent.

   5.   *Statement Against Interest*

Finally, Plaintiff argues that Baker's claims adjusters' adoption of Edwards' statements during the inspection are admissible against Baker as a statement against interest. Rule 804(b)(3) generally provides that if a witness is unavailable, a statement that "a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability" is not excluded under the hearsay rule. FED. R. EVID. 804(b)(3).

First, Plaintiff has not demonstrated that either Edwards or the Baker claims adjusters are "unavailable," as contemplated by Rule 804. More importantly, Rule 804(b)(3) could only potentially apply to the first level of hearsay, Baker's claims adjusters' adoption of Edwards' statements, and not the second level of hearsay, Edwards' statements themselves. Edwards' observations during his inspection were not "contrary to [his] proprietary or pecuniary interest," therefore Rule 804(b)(3) does

6

not apply to them.

6. *Summary*

In summary, both the Edwards report and Edwards' statements during his inspection of Plaintiff's facility are plainly hearsay. Therefore, the Court tentatively grants Baker's motion to exclude them, without prejudice to Plaintiff's right to make more specific arguments regarding the exceptions to the hearsay rule discussed above.

## B. *Statements from Howard Industries Employees*

Defendant also seeks exclusion of certain statements that unidentified employees of Howard Industries made to Plaintiff's owner regarding their observations of the HCl vapor. In response, Plaintiff does not deny that these statements are hearsay, but Plaintiff argues that they are admissible under the exception for present sense impressions.

As noted above, Rule 803(1) provides that "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it" is not excluded by the rule against hearsay. FED. R. EVID. 803(1). Plaintiff's owner testified that the statements in question were made to him two to three days after the acid spill. Therefore, they were not "present sense impressions," and Rule 803(1) does not apply.

While Plaintiff broadly argues that the statements may be admissible for a purpose other than to prove the truth of the matter asserted therein, it did not specify

any such alternative purpose in briefing. Therefore, the Court grants this aspect of Baker's motion.

## C.   *Compromise Offers and Negotiations*

Next, Defendant seeks the exclusion of certain communications which included compromise offers and negotiations. First, Baker's third-party claim administrator sent an e-mail to Plaintiff in which he represented that he had authority to issue an advance payment for Plaintiff's expenses. Exhibit D to Motion in Limine, *Burroughs Diesel, Inc. v. Baker Petrolite, LLC*, No. 2:18-CV-26-KS-MTP (S.D. Miss. Oct. 8, 2019), ECF No. 191-4. In another e-mail, the claim administrator discussed how to structure a potential settlement. Exhibit E to Motion in Limine, *Burroughs Diesel, Inc. v. Baker Petrolite, LLC*, No. 2:18-CV-26-KS-MTP (S.D. Miss. Oct. 8, 2019), ECF No. 191-5. Finally, an adjuster hired by Baker's claim administrator allegedly told Plaintiff's representatives that Baker would reimburse Plaintiff for its tire inventory.

Rule 408 provides:

Evidence of the following is not admissible – on behalf of any party – either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:

> (1) furnishing, promising, or offering – or accepting, promising to accept, or offering to accept – a valuable consideration in compromising or attempting to compromise the claim; and
>
> (2) conduct or a statement made during compromise negotiations about the claim . . . .

FED. R. CIV. P. 408(a). The e-mails and statements listed above plainly constitute compromise offers and/or negotiations, and, therefore, they are not admissible.

Plaintiff argues that this evidence is relevant to demonstrate why it delayed mitigating its damages. It contends that its owners relied on the representations from Baker's agents and delayed certain remediation efforts. In reply, Baker represented that it will not assert a mitigation defense at trial.

Therefore, the Court grants this aspect of Baker's motion. However, if Baker opens the door, Plaintiff is free to ask the Court to revisit the issue.

### D. *Goodyear Photographs/Powerpoint*

During discovery, Goodyear, a third-party, produced to Baker a copy of a PowerPoint presentation that included photographs taken at Plaintiff's facility three days after the acid spill. Baker requested that Goodyear produce a copy of the photographs in their native format because the copy that was initially produced was of poor quality. Goodyear produced the same photos in their original format, and the images are obviously clearer and of higher resolution. *Compare* Exhibit F to Motion in Limine, *Burroughs Diesel, Inc. v. Baker Petrolite, LLC*, No. 2:18-CV-26-KS-MTP (S.D. Miss. Oct. 8, 2019), ECF No. 191-6, *to* Exhibit F to Motion in Limine, *Burroughs Diesel, Inc. v. Baker Petrolite, LLC*, No. 2:18-CV-26-KS-MTP (S.D. Miss. Oct. 8, 2019), ECF No. 191-6. Baker argues that the Court should exclude the initially produced copies pursuant to the "best evidence rule." In response, Plaintiff argues that the initially produced copies were properly authenticated during the 30(b)(6) deposition of Goodyear, while the subsequently produced originals have never been authenticated.

9

Rule 1002 provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." FED. R. EVID. 1002. But Rule 1003 provides that "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." FED. R. EVID. 1003. The Rules define a "duplicate" as "a counterpart produced by a mechanical, photographic, chemical, electronic, or other equivalent process or technique that accurately reproduces the original." FED. R. EVID. 1001(e). Application of these rules "generally depends on the particular state of facts presented in each case and changing slightly in each instance . . . ." *R.R. Mgmt. Co., LLC v. CFS La. Midstream Co.*, 428 F.3d 214, 218 (5th Cir. 2005).

Plaintiff does not deny that the initially produced photographs are copies, and that the subsequently produced photographs are the originals. In fact, Plaintiff cited Rule 1003 in briefing, concerning the admissibility of duplicates. Moreover, Plaintiff does not deny that the original photographs are accurate. Rather, Plaintiff argues that Defendant has not authenticated them.

First, Defendant's motion does not seek the admission of the subsequently produced original photographs. Instead, Defendant seeks the exclusion of the initially produced copies. Therefore, the authenticity of the originals is irrelevant to the present motion.

A "duplicate" of a photograph "accurately reproduces the original." FED. R.

EVID. 1001(e). Here, the copies do not accurately reproduce the original photographs. Instead, they appear to have been tinted in red or orange at some point in reproduction, significantly altering the colors of the images. The extent of corrosion caused by the acid fumes is a key issue in this case, and the addition of red/orange tint to the images is a material alteration. In short, the copies which Plaintiff wants to introduce are not an accurate reproduction of the original photographs. Therefore, they are not "duplicates," and they are not admissible under Rule 1003. Moreover, Rule 1003 includes an exception to the general rule that duplicates are admissible when "circumstances make it unfair to admit the duplicate." FED. R. EVID. 1003. Here, Plaintiff does not deny that the original photographs are clearer, and Plaintiff did not explain why the copies are all tinted red/orange. Therefore, the Court concludes that it would not be fair to admit the copies of the Goodyear photographs because they appear to have been materially altered in the reproduction process. The Court grants this aspect of Baker's motion.

### E.  Caleb Worrell

Plaintiff timely produced to Baker certain photographs taken by an employee of the Laurel Fire Department on the night of the acid spill. On September 27, 2019, approximately seven months after the discovery deadline, Plaintiff discovered the identity of the person who took the photographs: Caleb Worrell. Plaintiff's counsel disclosed the photographer's identity on the same day. Three days later, on September 30, 2019, Plaintiff formally supplemented its initial disclosures,

identifying Worrell as a potential witness.

Baker argues that the Court must exclude Worrell's testimony because he was not timely disclosed as a potential witness. The Court will assume for the purpose of addressing the current motion that Worrell's identity was not timely disclosed. When determining whether to strike an expert's testimony for a party's failure to properly and timely disclose required information, the Court considers the following factors:

(1) the importance of the witnesses' testimony;

(2) the prejudice to the opposing party of allowing the witnesses to testify;

(3) the possibility of curing such prejudice by a continuance; and

(4) the explanation, if any, for the party's failure to comply with the discovery order.

*Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc.*, 73 F.3d 546, 572 (5th Cir. 1996).

First, Plaintiff has a reasonable explanation for not specifically identifying Worrell by name during the discovery period. It simply could not identify him, and it appears that as soon as it did, it notified Defendant and formally supplemented its disclosures.

Although the Court does not have a deposition transcript or affidavit, Worrell's testimony appears to be important because he was present on the scene of the acid spill while it was happening. Moreover, he took photographs that were offered as evidence on the parties' dispositive motions, and, presumably, his testimony is

required to authenticate the photographs.

Finally, the Court does not believe that Defendant would be severely prejudiced by allowing Worrell to testify. Plaintiff timely responded to Baker's written discovery requests and identified as potential witnesses all individuals who worked for emergency response teams and government agencies who responded to, investigated, or otherwise were involved with the acid spill. Documents which were timely obtained by both parties from the Mississippi Emergency Management Agency identified Caleb Worrell, an employee of the Laurel Fire Department, as one of the emergency responders. Therefore, Defendants had just as much information as Plaintiff did, and they were free to seek out the identity of the photographer and interview him to learn what his testimony might be. Moreover, to whatever extent Baker is prejudiced by allowing Worrell to testify, Plaintiff shares the prejudice in that it has not deposed Worrell either. The Court denies this aspect of Defendant's motion.

SO ORDERED AND ADJUDGED this 28th day of February, 2020.

/s/ Keith Starrett
KEITH STARRETT
UNITED STATES DISTRICT JUDGE